UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ROBERT L. WELCH, | ) | CASE NO. C06-0345-JLR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner | ) | DISABILITY APPEAL |
| of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Robert L. Welch proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner partially denied plaintiff's application for Supplemental Security Income (SSI) benefits and Disability Insurance (DI) benefits after a hearing before an Administrative Law Judge (ALJ).

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1955.[1] He completed high school and took some welding classes at a technical college. (AR 213-14) Plaintiff previously worked as a mockup mechanic,

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01  painter, production welder, and acid bath welder.

02      Plaintiff filed an application for SSI and DI benefits in May 2002, alleging disability since

03  January 15, 2002 due to knee problems.  (AR 3, 61-64)  His applications were denied initially and

04  on reconsideration, and he timely requested a hearing.

05      On March 21, 2005, ALJ Donald P. Krainess held a hearing, taking testimony from

06  plaintiff and vocational expert (VE) William Weiss.  (AR 193-231)  On May 27, 2005, ALJ

07  Krainess issued a decision finding plaintiff not disabled from January 15, 2002 to December 31,

08  2004 and disabled after January 1, 2005.  (AR 19-26)

09      Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on

10  January 17, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 6-9)

11  Plaintiff appealed this final decision of the Commissioner to this Court.

## DISCUSSION

13      The Commissioner follows a five-step sequential evaluation process for determining

14  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be

15  determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged

16  in substantial gainful activity since his alleged onset date.  At step two, it must be determined

17  whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's degenerative joint

18  disease of his right knee severe.  Step three asks whether a claimant's impairments meet or equal

19  a listed impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria

20  for any listed impairments.  If a claimant's impairments do not meet or equal a listing, the

21  Commissioner must assess residual functional capacity (RFC) and determine at step four whether

22  the claimant has demonstrated an inability to perform past relevant work.  The ALJ assessed

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   plaintiff's RFC and found him unable to perform his past relevant work.  If a claimant

02   demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner

03   to demonstrate at step five that the claimant retains the capacity to make an adjustment to work

04   that exists in significant levels in the national economy.  If a claimant is between fifty and fifty-four

05   years old, and has no transferable skills from past relevant work, the medical vocational rules

06   requires the claimant to be found disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14.  The

07   ALJ found plaintiff capable of making an adjustment to work existing in significant numbers in the

08   national economy, including work as a table sorter, semi conductor bonder, charge account clerk,

09   and call out operator.  The ALJ also found plaintiff to have no transferable skills from past relevant

10   work.  Thus, the ALJ found plaintiff not disabled prior to his fiftieth birthday, and disabled after

11   his fiftieth birthday.

12          This Court's review of the ALJ's decision is limited to whether the decision is in

13   accordance with the law and the findings supported by substantial evidence in the record as a

14   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

15   than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

16   mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

17   (9th Cir. 1989).  "Where the evidence is susceptible to more than one rational interpretation, one

18   of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*,

19   278 F.3d 947, 954 (9th Cir. 2002).

20          Plaintiff argues that the ALJ erred by failing to consider the effect of plaintiff's obesity,

21   making an adverse credibility finding, relying on VE testimony that was inconsistent with the

22   Dictionary of Occupational Titles (DOT), and rejecting two physicians' assessments that plaintiff

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  cannot stand or walk at work.  In addition, plaintiff claims that a physician's declaration submitted

02  only to the Appeals Council proves that the ALJ's decision is not supported by substantial

03  evidence.  Plaintiff requests remand for further administrative proceedings.  The Commissioner

04  argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

05                                                      <u>Obesity</u>

06          A claimant bears the burden of proving his disability and an ALJ will only consider

07  impairments raised by a claimant or about which the ALJ receives evidence.  20 C.F.R. §§

08  404.1512(a), 416.912(a).  However, "[t]he ALJ always has a 'special duty to fully and fairly

09  develop the record and to assure that the claimant's interests are considered ... even when the

10  claimant is represented by counsel.'"  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003)

11  (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  "When a claimant is not

12  represented by counsel, this responsibility is heightened."  *Id.* (citing *Higbee v. Sullivan*, 975 F.2d

13  558, 561 (9th Cir. 1992)).

14          In *Celaya*, the Ninth Circuit remanded for further administrative proceedings when an ALJ

15  failed to consider the effect of the claimant's obesity, despite the fact that the claimant never

16  mentioned her obesity or claimed that it impaired her functioning.  *Id.* at 1181-83.  The court gave

17  three reasons for doing so.  First, the court stated that obesity was "implicitly" raised in the

18  claimant's report of symptoms because her reported height and weight revealed a Body Mass

19  Index (BMI) of at least 44, which qualified as "extremely obese."  *Id.* at 1179, 1182.  Second, at

20  the time of the hearing, obesity still qualified as a listed impairment, and it was clear from the

21  record that the claimant's weight was close to qualifying as a listed impairment, and was a

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  condition that would exacerbate her reported illnesses.[2]  *Id.* at 1182.  Third, the claimant was not

02  represented by counsel and the ALJ bore a heightened responsibility to develop the record as a

03  result.  *Id.* at 1182-83.

04      Despite the fact that he never mentioned his obesity or claimed that it impaired his

05  functioning, plaintiff argues that the ALJ erred by failing to consider the aggravating or combined

06  effect of his obesity on his knee condition.  *See* Social Security Ruling (SSR) 02-1p at *6 ("The

07  combined effects of obesity with other impairments may be greater than might be expected without

08  obesity.");  20 C.F.R. §§ 404.1523, 404.1545(e) (requiring consideration of the effect of

09  combination of impairments).  Plaintiff is seventy or seventy-one inches tall (AR 124, 138), and

10  weighed between 240 and 279 pounds during the period between January 15, 2002 and December

11  31, 2004 (AR 73, 176).  This equates to a BMI between thirty-three and forty.[3]  A BMI of thirty

12  or greater indicates obesity and a BMI of forty or greater indicates "extreme" obesity.  SSR 02-1p

13  at *2.  Thus, plaintiff varied from obesity to extreme obesity during the period in question.

14      The Commissioner argues that *Celaya* does not apply in the instant case.  The

15  Commissioner cites the Ninth Circuit's decision distinguishing *Celaya* in *Burch v. Barnhart*, 400

16  F.3d 676 (9th Cir. 2005).  In *Burch*, the court declined to remand for further administrative

17  proceedings, despite the fact that the ALJ had failed to address the claimant's obesity, because

18  there was no evidence that the claimant's obesity exacerbated her other impairments, and because

19  the claimant was represented by counsel at her hearing.  *See id.* at 681-83.  The court placed

20  _____

21      [2] Obesity is no longer a listed impairment.  Revised Medical Criteria for Determination of
Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46,122 (Aug. 24, 1999).

22      [3] BMI from tables at http://www.nhlbi.nih.gov/guidelines/obesity/bmi_tbl.htm.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 | particular significance on the presence of counsel.  *Id.* at 682.

02 |      Neither plaintiff, nor any reporting physician raised plaintiff's obesity as an issue with

03 | respect to plaintiff's impairment.  The record is devoid of any evidence that plaintiff's impairment

04 | has been adversely affected by his obesity.  Also, the ALJ concluded that the claimant *did* have a

05 | knee impairment, which was the only impairment there was any medical evidence of, that was

06 | severe and which restricted him to sedentary work.  Given plaintiff's failure to raise the issue of

07 | obesity himself, the lack of medical evidence suggesting plaintiff's obesity affected his impairment,

08 | and the fact that plaintiff was represented by counsel, the ALJ did not err in failing to address

09 | plaintiff's obesity.[4]

10 | <div align="center">Credibility</div>

11 |      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

12 | reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In

13 | finding a social security claimant's testimony unreliable, an ALJ must render a credibility

14 | determination with sufficiently specific findings, supported by substantial evidence.  "General

15 | findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

16 | evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

17 | 1995).  "We require the ALJ to build an accurate and logical bridge from the evidence to her

18 | conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

19 | *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).  "In weighing a claimant's credibility, the

20 | ----------

21 |      [4] Because the undersigned concludes that the ALJ did not err in failing to address plaintiff's
obesity, this Court need not address the Commissioner's alternative argument that the ALJ's

22 | failure to consider plaintiff's obesity is harmless because the ALJ implicitly accommodated the
condition by limiting plaintiff to sedentary work where he may sit or stand at his will.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

02 his testimony and his conduct, his daily activities, his work record, and testimony from physicians

03 and third parties concerning the nature, severity, and effect of the symptoms of which he

04 complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

05      In this case, the ALJ rendered the following credibility determination:

06      The weight of the objective evidence demonstrates that the claimant's allegations of
        limitation due to right knee osteoarthritis from January 15, 2002 to December 31,
07      2004 are not entirely credible considering the criteria set forth in Social Security
        Ruling 96-7p.
08      ...

09      The claimant testified at the hearing that due to continued problems with the right
        knee, he had difficulty standing, he lied down 2-3 hours in the afternoon, and he was
10      limited to driving 15 minutes at a time, and walking ½ - 3/4 of a block.  Treatment for
        the knee prior to establishing care by Dr. Roter in February 2004 is minimal.  The
11      objective evidence confirmed functional difficulties because of the knee, but he was
        not precluded from all work-related activities.  According to his own statements, he
12      remained capable of lifting and carrying 10 pounds, preparing his own meals,
        shopping for groceries, cleaning his house, washing dishes, and doing laundry.  In
13      fact, he independently provided care for an elderly sister who lived with him.
        Evidence from his treating physician and his ability to engage in said daily activities
14      indicates that the claimant was not limited to the degree he alleges.

15 (AR 22 (internal citations to record omitted))

16      Plaintiff challenges the ALJ's adverse credibility finding by stating that "Welch's minimal

17 daily activities interspersed with rest did not disprove her [sic] claim of disability." (Dkt. 10 at 18)

18 Plaintiff also cites *Vertigan*, 260 F.3d at 1050, which states: "This court has repeatedly asserted

19 that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

20 driving a car, or limited walking for exercise, does not in any way detract from her credibility as

21 to her overall disability."

22      The ALJ, however, did not rely on the mere fact of ordinary daily activities in making his

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01 credibility determination.  He relied upon three additional pieces of evidence.  First, he relied upon

02 plaintiff's minimal treatment prior to establishing care with Dr. Roter in 2004.  *C.f. Burch*, 400

03 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

04 The only treatment during that time appears to be a single meeting with Dr. Medina in January

05 2002. (AR 135)  Also, plaintiff took only Tylenol for his pain. (AR 206)  This level of treatment

06 appears inconsistent with plaintiff's reported symptoms.   Second, the ALJ relied upon the

07 inconsistency of plaintiff's testimony with the opinion of Dr. Roter, his treating physician.  *See*

08 SSR 96-7p at *5 ("One strong indication of the credibility of an individual's statements is their

09 consistency, both internally and with other information in the case record.").   Plaintiff's reported

10 limitations are inconsistent with Dr. Roter's opinion that plaintiff could do sedentary work.  (AR

11 156, 163)   Third, the ALJ relied upon plaintiff's provision of care for his elderly sister.

12 Accordingly, the ALJ's credibility determination is supported by substantial evidence and should

13 be upheld.[5]

14 <div align="center">Vocational Expert Testimony</div>

15        If a VE's testimony conflicts with the DOT, the ALJ must "obtain a reasonable explanation

16 for the apparent conflict."  SSR 00-4p at *4.  An ALJ may rely on VE testimony that conflicts

17 with the DOT only if there is "persuasive evidence to support the deviation."  *Johnson v. Shalala*,

18 60 F.3d 1428, 1435 (9th Cir. 1995).

19        Plaintiff alleges that the VE's testimony was inconsistent with the DOT.  Plaintiff identifies

20 ───────────────

21     [5] In response, plaintiff argues that the Commissioner misstates the ALJ's rationale in
arguing that the ALJ found plaintiff "untruthful."  A review of the Commissioner's response brief,

22 however, indicates that the Commissioner's argument was limited to an assessment of plaintiff's
credibility, which does not necessarily infer lack of truthfulness.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 the alleged inconsistency as follows: "The vocational expert purported to identify three (or four)

02 'sedentary' DOT jobs that allowed a claimant to sit or stand at his option.  However, a 'sedentary'

03 DOT job requires sitting for prolonged periods of two hours: 'In order to perform a full range of

04 sedentary work, an individual must be able to remain in a seated position for approximately 6

05 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at

06 approximately 2-hour intervals. . . .' SSR 96-9p."  (Dkt. 10 at 17 (internal citations to record

07 omitted))

08          However, plaintiff fails to identify any inconsistency between the VE's testimony and the

09 DOT.  Plaintiff recites the sitting requirement for a full range of sedentary work. *See* SSR 96-9p

10 at *6.  Yet, the ALJ explicitly disclaimed a finding that plaintiff could perform a full range of

11 sedentary work.  (AR 25 ("[T]he claimant's exertional limitations do not allow him to perform the

12 full range of sedentary work[.]"))  Moreover, in accordance with the ALJ's hypothetical, the VE

13 only purported to identify a subset of sedentary jobs that would allow plaintiff to sit or stand at

14 will.  (AR 225)  In fact, SSR 96-9p clarifies that when a claimant cannot do the sitting or standing

15 required by sedentary work a VE should be consulted to determine what jobs would be

16 appropriate, which is precisely what was done here.  *See* SSR 96-9p at *7.  Plaintiff also fails to

17 identify any inconsistency between the VE's testimony and the DOT job descriptions for the

18 positions identified.  *See* DOT 739.687-182,[6] 726.685-066, 205.367-014.  Accordingly, the ALJ's

19 decision should be upheld.

20

21

22          [6] The VE mistakenly cited DOT "739.689-182" for "table sorter."  (AR 225)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 <center>Physicians' Opinions</center>

02   In general, more weight should be given to the opinion of a treating physician than to a

03 non-treating physician, and more weight to the opinion of an examining physician than to a non-

04 examining physician. *Lester*, 81 F.3d at 830. Where not contradicted by another physician, a

05 treating or examining physician's opinion may be rejected only for "'clear and convincing'"

06 reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where

07 contradicted, a treating or examining physician's opinion may not be rejected without "'specific

08 and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-

09 31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion of the

10 treating physician is contradicted, and the non-treating physician's opinion is based on independent

11 clinical findings that differ from those of the treating physician, the opinion of the non-treating

12 physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041

13 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

14 A. <u>Dr. Roter's and Dr. Wilson's Standing and Walking Assessments</u>

15   Plaintiff alleges that the ALJ erred by not giving legally sufficient reasons for rejecting the

16 opinions of treating physician Dr. Brad Roter and examining physician Dr. Clyde Wilson that

17 plaintiff could not do the standing and walking required by sedentary work. The ALJ found that

18 "claimant's exertional limitations do not allow him to perform the full range of sedentary work[.]"

19 (AR 25) However, the ALJ found plaintiff's RFC to be the following: "lift and carry 20 pounds

20 occasionally; lift and carry 10 pounds frequently; *stand and/or walk at least 2 hours in 8-hour*

21 *workday*; sit about 6 hours in an 8-hour workday; push and/or pull without limitation; climb ramps

22 and stairs occasionally; and balance occasionally." (AR 25 (emphasis added)) "The full range of

01  sedentary work requires that an individual be able to stand and walk for a total of approximately

02  2 hours during an 8-hour workday."  SSR 96-9p.

03      Plaintiff's argument fails with respect to Dr. Roter.  Dr. Roter wrote on his June and

04  November 2004 opinions that plaintiff's "overall work level" was "sedentary work."  (AR 156,

05  163)  He wrote this just above the following definition for sedentary work: "the ability to lift 10

06  pounds maximum and frequently lift and/or carry such articles as files and small tools.  A sedentary

07  job may require sitting, walking and standing for brief periods."  (AR 156, 163)  This portion of

08  the opinions is consistent with the ALJ's findings.  In fact, the ALJ stated that he concurred with

09  Dr. Roter's conclusions and afforded them great weight.  (AR 22)

10      However, plaintiff emphasizes a different section of Dr. Roter's opinions, where Dr. Roter

11  indicated that plaintiff's knee condition was "severe" and lists standing, walking, and lifting as

12  "affected work activities."  (AR 156, 163)  Just above this section, "severe" is defined as

13  "[i]nability to perform one or more basic work-related activities[.]"  (AR 156, 163)  Plaintiff

14  interprets this section as indicating that he was unable to stand, walk, or lift, thus rendering Dr.

15  Roter's opinions inconsistent with the ALJ's findings concerning plaintiff's RFC. (Dkt. 10 at 14)

16      The ALJ's decision will not be overturned unless there is no rational interpretation of the

17  evidence that supports the ALJ's decision.  *Thomas*, 278 F.3d at 954.  Here, it would be rational

18  for the ALJ to interpret Dr. Roter's opinions as indicating that plaintiff was capable of sedentary

19  work, as that is what Dr. Roter explicitly wrote, while regarding the other notations as indicating

20  that plaintiff's knee condition affects plaintiff's ability to walk, stand and lift, and is severe enough

21  to render plaintiff unable to perform some work-related activities.  This is particularly reasonable

22  in light of the fact that there is no evidence that plaintiff is unable to stand or walk and there are

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 repeated references in the record to plaintiff walking.  (AR 124, 137-38, 207)  Thus, the ALJ's

02 decision with respect to Dr. Roter's June and November 2004 opinions should be upheld.[7]

03          The ALJ's treatment of Dr. Wilson's July 2003 opinion is a more difficult issue.  In the

04 section where the physician is asked to check a box indicating the exertional level the person can

05 perform, Dr. Wilson put a bracket around the boxes for "sedentary work" and "severely limited,"

06 defined as "unable to lift at least 2 pounds or unable to stand and/or walk," and checked "severely

07 limited."  (AR 177)  Thus, it is ambiguous what exertional level Dr. Wilson selected.  Immediately

08 following this section, Dr. Wilson wrote: "Standing/walking limited to 5 minutes every 2 hours.

09 May not drive as part of job duties.  No stairs."[8]  (Id.)  Dr. Wilson is not mentioned anywhere in

10 the ALJ's opinion.  While Dr. Wilson's opinion is contradicted by other physicians' opinions,

11 plaintiff correctly argues that this is error because an ALJ may only reject a contradicted examining

12 physician's opinion if he gives specific, legitimate reasons supported by substantial evidence.  *See*

13 *Lester*, 81 F.3d at 830-31.

14          The Commissioner appears to argue that the ALJ did not need to consider Dr. Wilson's

15 reports because they were inauthentic and unsupported.  However, his argument is an improper

16 post hoc rationalization.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The

17 Commissioner also argues that an ALJ does not need to accept a treating physician's opinion that

18 _____

19      [7] Plaintiff attacks as a post hoc rationalization the Commissioner's alleged claim that the
ALJ properly rejected Dr. Roter's opinion because it was internally inconsistent.  However, the
20 Commissioner merely stated that, *if* plaintiff's interpretation were true, Dr. Roter's report would
be internally inconsistent.

21      [8] It should be noted that Dr. Wilson examined plaintiff again in January 2004 and clearly
indicated that plaintiff was capable of sedentary work, without mention of the standing and
22 walking limitations described in his July 2003 opinion.  (AR 168)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01 is conclusory, brief, and unsupported by clinical findings. *See Tonapetyan v. Halter*, 242 F.3d

02 1144, 1149 (9th Cir. 2001). While this is true, the ALJ in the instant case gave no reason for

03 rejecting Dr. Wilson's opinion, and thus this argument is also an improper post hoc rationalization.

04 *See Connett*, 340 F.3d at 874. Finally, the Commissioner argues that the failure to explicitly

05 discuss Dr. Wilson's opinion was harmless error. *See Burch*, 400 F.3d at 679 ("A decision of the

06 ALJ will not be reversed for errors that are harmless.")

07     The Ninth Circuit recently addressed at length its treatment of harmless error in *Stout v.*

08 *Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006). After reviewing Ninth Circuit

09 law on harmless error in the social security context, the *Stout* court noted two common threads

10 in cases where an ALJ's error was held harmless. First, it noted that the ALJ's error in each case

11 "was inconsequential to the ultimate nondisability determination." *Id.* at 1055. Second, it stated

12 that the Ninth Circuit had never found an ALJ's "silent disregard of lay testimony about how an

13 impairment limits a claimant's ability to work," which was the error at issue, to be harmless. *Id.*

14 at 1055-56. As a result, the court held: "[W]here the ALJ's error lies in a failure to properly

15 discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the

16 error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

17 testimony, could have reached a different disability determination."[9] *Id.* at 1056. The court then

18 explained why the ALJ's error was not harmless. One reason of particular significance to the

19 instant case was:

20 _____

21     [9] While the *Stout* court applied harmless error in the context of disregarded lay testimony,
it recognized that harmless error was not limited to that area, as it relied on Ninth Circuit cases
finding harmless error with respect to credibility determinations, findings regarding a claimant's

22 age, applications of medical-vocational tables, among others. *See Stout*, 454 F.3d at 1054-55.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01    [W]e cannot say the ALJ's error here was nonprejudicial to [claimant].  Based on his
02    RFC determination and *the VE's response to a hypothetical–which both failed to
      account for lay testimony about how [claimant's] impairments negatively affect his
03    ability to work*–the ALJ found [claimant] could return to his previous work and was,
      therefore, not disabled.

04    *Id.* at 1056 (emphasis added).

05         While the Ninth Circuit has not directly addressed harmless error with respect to the

06    improper handling of a physician's opinion, other circuits have.  The Sixth Circuit has held that

07    an ALJ's failure to explicitly consider a treating physician's opinion was harmless error because

08    the hypothetical posed to the VE by the ALJ included the limitations found by the physician.  *See*

09    *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).  Similarly, the Seventh Circuit

10    has held that an ALJ's improper rejection of a treating physician's opinion is not reversible error

11    if the ALJ included that physician's limitations in his hypothetical to the VE.  *See Shramek v.*

12    *Apfel*, 226 F.3d 809, 814-15 (7th Cir. 2000).

13         At the hearing in the instant case, the ALJ concluded his hypothetical to the VE by asking:

14    "So can you identify any sedentary work like that that would be unskilled and permit the individual

15    to sit or stand at will?"  (AR 225)  This question accommodated Dr. Wilson's opinion that plaintiff

16    could stand and walk for only five minutes every two hours.  The VE responded by identifying the

17    three positions relied upon by the ALJ at step five to determine that plaintiff was not disabled.

18    (AR 24, 225-26)  The ALJ later asked the VE with respect to one of the positions: "And this can

19    be done efficiently either from a standing or sitting position?"  (AR 225)  The VE responded

20    affirmatively.  (AR 226)  Thus, while the ALJ failed to address Dr. Wilson's opinion, this omission

21    was harmless, as the positions the ALJ relied upon at step five were consistent with the limitations

22    found by Dr. Wilson.  Accordingly, the ALJ's decision should be upheld with respect to Dr.

01 Wilson's July 2003 opinion.

02 B.    Dr. Roter's July 2005 Declaration

03       After the ALJ's partially favorable decision on May 27, 2005, plaintiff submitted a

04 declaration by Dr. Roter dated July 13, 2005 to the Appeals Council in support of plaintiff's

05 appeal. (AR 184-92) Dr. Roter's declaration stated that it would be reasonable to find that

06 plaintiff's limitations have prevented him from engaging in full time sedentary work since January

07 2002. (AR 188) The Appeals Council rejected the declaration because Dr. Roter did not examine

08 plaintiff until February 2004 and the July 2005 declaration conflicts with his statements in June and

09 November 2004 that plaintiff could do sedentary work, and because Dr. Roter's comments that

10 plaintiff needed to elevate his legs appeared inconsistent with Dr. Roter's previous reports and

11 reports by other physicians that plaintiff could not extend or straighten his right knee. (AR 7)

12       As an initial matter, the Commissioner argues that this Court may not remand for further

13 administrative proceedings due to new evidence because the requirements of "sentence six" of 42

14 U.S.C. § 405(g) are not met. Under sentence six, a court "may at any time order additional

15 evidence to be taken before the Commissioner of Social Security, but only upon a showing that

16 there is new evidence which is material and that there is good cause for the failure to incorporate

17 such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). However, the cases

18 the Commissioner cites in support of her claim that Dr. Roter's July 2005 declaration may only

19 be reviewed under sentence six are inapposite. *See Mayes v. Massanari*, 276 F.3d 453, 461 n.3

20 (9th Cir. 2001) (declining to decide whether good cause is required for submission of new

21 evidence because claimant conceded that good cause was required); *Key v. Heckler*, 754 F.2d

22 1545, 1551 (9th Cir. 1985) (applying sentence six where claimant submitted new evidence to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01   Ninth Circuit); *Burton v. Heckler* 724 F.2d 1415, 1416-18 (9th Cir. 1984) (applying sentence six

02   and remanding for further consideration of new evidence submitted to the Appeals Council *as well*

03   *as* additional new evidence submitted to the district court).  In none of these cases did the Ninth

04   Circuit hold that new evidence submitted to the Appeals Council must meet the requirements of

05   sentence six to be reviewed by the District Court.

06          While the Ninth Circuit has not directly addressed the issue, it appears appropriate for this

07   Court to review evidence submitted to the Appeals Council under "sentence four" of § 405(g),

08   which states that "[t]he court shall have power to enter, upon the pleadings and transcript of the

09   record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

10   Security, with or without remanding the cause for a rehearing," rather than sentence six.  *See*

11   *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional

12   materials because the Appeals Council addressed them in the context of denying Appellant's

13   request for review."; remanding for further consideration of the evidence, including that submitted

14   to the Appeals Council, without mention of whether such evidence must be new, material, or

15   previously omitted for good cause); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993)

16   ("Although the ALJ's decision became the Secretary's final ruling when the Appeals Council

17   declined to review it, the government does not contend that the Appeals Council should not have

18   considered the additional report submitted after the hearing, or that we should not consider it on

19   appeal.  Moreover, although the Appeals Council 'declined to review' the decision of the ALJ, it

20   reached this ruling after considering the case on the merits; examining the entire record, including

21   the additional material; and concluding that the ALJ's decision was proper and that the additional

22   material failed to 'provide a basis for changing the hearing decision.' For these reasons, we

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  consider on appeal both the ALJ's decision and the additional material submitted to the Appeals

02  Council."). Given the absence of any discussion or consideration of good cause or materiality,

03  both *Ramirez* and *Harman* can be read to implicitly allow for consideration of Appeals Council

04  evidence pursuant to sentence four. Accordingly, this Court shall consider Dr. Roter's July 2005

05  declaration.

06        The Commissioner then appears to argue that the Appeals Council's decision to reject Dr.

07  Roter's July 2005 declaration is supported by substantial evidence. (Dkt. 12 at 10-12) As

08  indicated above, the Appeals Council noted: "Dr. Roter did not examine [plaintiff] until February

09  2004 and this opinion conflicts with his statements in June and November 2004 that [plaintiff]

10  could do sedentary work." (AR 7) The Commissioner appears to argue that retrospective

11  opinions based on the notes of another physician are entitled to less weight. (Dkt. 12 at 10)

12  Plaintiff correctly points out that Dr. Roter examined him during the relevant time period (January

13  15, 2002 to December 31, 2004), and that retrospective opinions are neither improper, nor

14  irrelevant, *see Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988). However, Dr. Roter's

15  July 2005 declaration is inconsistent with his prior opinions. As stated above, in June and

16  November 2004, Dr. Roter completed opinion forms indicating that plaintiff was capable of

17  sedentary work. (AR 156, 163) In his July 2005 declaration, Dr. Roter was asked: "Since January

18  15, 2002, do you believe that Mr. Welch was capable of sedentary work, which involves standing

19  or walking two out of eight hours, sitting up six out of eight hours, and lifting up to 10 pounds

20  during one-third of the day?" (AR 188) Dr. Roter answered negatively. (AR 188) Plaintiff

21  argues that the opinions are consistent because Dr. Roter never explicitly stated in the June and

22  November 2004 opinions how long plaintiff could sit. Yet, the June and November 2004 opinions

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01  indicated that Dr. Roter believed plaintiff was capable of sedentary work, which necessarily

02  implied how long plaintiff could sit.  (*See* AR 156, 163)

03          Additionally, Dr. Roter checked boxes on the June and November 2004 opinion forms

04  indicating plaintiff had restricted mobility, agility, or flexibility in the following areas: balancing,

05  bending, climbing, crouching, kneeling, pulling, pushing, and stooping.  (AR 156, 163)  Dr. Roter

06  did not check the boxes for handling, reaching, or *sitting* (AR 156, 163), thus indicating Dr. Roter

07  believed plaintiff could sit without limitation.  However, in his July 2005 declaration, Dr. Roter

08  was asked: "[Plaintiff] also reports that he cannot sit for more than an hour at a time due to his

09  knee pain causing him to have to elevate his legs tow [sic] waist height for 30 minutes at a time.

10  Is that reasonable?"  (AR 186)  Dr. Roter responded affirmatively.  (AR 186)  The July 2005

11  declaration is, thus, also inconsistent with the June and November opinions regarding plaintiff's

12  ability to sit.

13          The Appeals Council also stated: "Dr. Roter's comments that you need to elevate your legs

14  with the knees extended also appears inconsistent with his previous reports and those by other

15  physicians that you could not extend or straighten your knee."  (AR 7)  Plaintiff does not challenge

16  the Appeals Council's statement that plaintiff could not extend or straighten his knee.  Rather,

17  plaintiff takes issue with the Appeals Council and Commissioner's alleged claim that "a person

18  cannot elevate a leg if the person cannot extend or straighten that extremity."  (Dkt. 13 at 6)

19          The Appeals Council and Commissioner make no such claim.  Instead, they point out that

20  Dr. Roter's statement in his July 2005 declaration that plaintiff needed to relieve the swelling in

21  his knee after sitting for thirty minutes "by elevating his legs and extending the knees," (AR 186),

22  is inconsistent with Dr. Ho's February 2003 examination report, which states: "The claimant is

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01   unable to straighten his right knee" (AR 139).  In addition, no other physician report, including

02   Dr. Roter's earlier reports, indicated that plaintiff needed to elevate or extend his left leg or knee.

03   Also, as mentioned above, Dr. Roter had previously indicated that plaintiff could sit without

04   limitation.  (AR 156, 163)  Accordingly, Dr. Roter's July 2005 declaration is inconsistent with

05   prior medical evidence concerning plaintiff's ability and need to elevate and extend his knee.

06   Given the above inconsistencies, plaintiff fails to demonstrate that the Appeals Council erred in

07   finding that Dr. Roter's July 2005 declaration did not provide a sufficient basis for changing the

08   ALJ's decision.

09                                        **CONCLUSION**

10          For the reasons described above, this matter should be AFFIRMED.  A proposed order

11   accompanies this Report and Recommendation.

12          DATED this 1st day of September, 2006.

13

14                                              Mary Alice Theiler
                                                United States Magistrate Judge

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19